# UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA

### AT BECKLEY

| | |
|---|---|
| HILMA STOVER,<br>*On behalf of herself and a class*<br>*of similarly situated persons,*<br><br>Plaintiff,<br><br>v.<br><br>FLUENT HOME, LLC*, and*<br>THE BANK OF MISSOURI<br>*doing business as* FORTIVA<br>RETAIL CREDIT,<br><br>Defendants. | CIVIL ACTION NO. 5:21-cv-00191 |

### THE BANK OF MISSOURI'S ANSWER TO COMPLAINT AND AFFIRMATIVE DEFENSES

NOW COMES Defendant The Bank of Missouri ("TBOM"), by and through its attorneys, and for its answer and affirmative defenses to Plaintiff's Class Action Complaint, states as follows.

### CLASS ACTION COMPLAINT

1. This complaint involves a home solicitation sale by Fluent Home, LLC. During a global pandemic, Fluent solicited an eighty-(80)-year-old widow into upgrading her home security service through a maskless door-to-door salesman. However, Fluent never provided her a contract that day, and after she cancelled the agreement, it never retrieved the equipment from her. Furthermore, Fluent fraudulently opened a credit card in Ms. Stover's name to balance its equipment, and that credit card company is now harassing Ms. Stover. Ms. Stover brings this action on behalf of herself and a class of similarly situated person to enforce the Fair Credit Reporting Act's rule regarding *Duties of Users Regarding Risk-Based Pricing* and prohibitions on impermissible reviews of a person's credit.

**ANSWER**:    TBOM admits that this action purports to seek redress for the alleged violations of the Fair Credit Reporting Act, but denies that it has violated that statute or any other

law.  TBOM is without knowledge and information sufficient to form a belief about the truth of the remaining allegations contained in Paragraph 1 and, therefore, denies same.

**PARTIES**

2.     Plaintiff Hilma Stover is an eighty-year-old widow residing in Kanawha County, WV.

**ANSWER**:  TBOM is without knowledge and information sufficient to form a belief about the truth of the allegations contained in Paragraph 2 and, therefore, denies same.

3.     Defendant Fluent Home, LLC ("Fluent") is a home security sales company engaging in door-to-door solicitations of consumers in West Virginia, with a principal place of business at 3400 N 1200 W, Lehi, UT, 84043 and a notice of process agent of Corporation Service Company, 209 West Washington Street, Charleston, WV, 25302.

**ANSWER**:  TBOM is without knowledge and information sufficient to form a belief about the truth of the allegations contained in Paragraph 2 and, therefore, denies same.

4.     Defendant The Bank of Missouri d/b/a Fortiva Retail Credit ("Fortiva") is a subprime credit lender that does business in West Virginia and is based at 916 North Kings Highway, Perryville, MO 63775.

**ANSWER**:  TBOM admits that it is a bank, that it is engaged in lending, among other activities, that it is has a bank branch located at 916 North Kings Highway, Perryville, MO 63775, and that it does business in West Virginia.  TBOM denies the remaining allegations contained in Paragraph 4.

**FACTS**

Sale and Financing

5.     On or about October 12, 2020, Plaintiff Hilma Stover was in her home when salesman Larry Araiza arrived at her home.

**ANSWER**:  TBOM is without knowledge and information sufficient to form a belief about the truth of the allegations contained in Paragraph 5 and, therefore, denies same.

6.      Plaintiff's daughter, Kelly Kennedy, was also present at the house and witnessed Mr. Araiza's interactions with her mother.

**ANSWER**: TBOM is without knowledge and information sufficient to form a belief about the truth of the allegations contained in Paragraph 6 and, therefore, denies same.

7.      Mr. Araiza offered for sale a Fluent home security system free for three months along with Fluent's assistance with cancelling Plaintiff's existing home security contract.

**ANSWER**: TBOM is without knowledge and information sufficient to form a belief about the truth of the allegations contained in Paragraph 7 and, therefore, denies same.

8.      Mr. Araiza promised a 30-day right of cancellation if Plaintiff was not satisfied with the product.

**ANSWER**: TBOM is without knowledge and information sufficient to form a belief about the truth of the allegations contained in Paragraph 8 and, therefore, denies same.

9.      Mr. Araiza provided Plaintiff with a pamphlet and handwrote "30 Day ROC" to memorialize the right of cancellation.

**ANSWER**: TBOM is without knowledge and information sufficient to form a belief about the truth of the allegations contained in Paragraph 9 and, therefore, denies same.

10.     Mr. Araiza did not provide any other documentation to Plaintiff.

**ANSWER**: TBOM is without knowledge and information sufficient to form a belief about the truth of the allegations contained in Paragraph 10 and, therefore, denies same.

11.     Plaintiff's daughter urged Mr. Araiza to reschedule for when Plaintiff's son could attend the sales pitch.

**ANSWER**: TBOM is without knowledge and information sufficient to form a belief about the truth of the allegations contained in Paragraph 11 and, therefore, denies same.

12.     Mr. Araiza claimed that that was unnecessary because Plaintiff could cancel anytime for 30 days.

**ANSWER**: TBOM is without knowledge and information sufficient to form a belief about the truth of the allegations contained in Paragraph 12 and, therefore, denies same.

13.    Mr. Araiza obtained a payment from Plaintiff of approximately $40 to activate the sale using a credit card reader on a tablet device he brought with him.

**ANSWER**:  TBOM is without knowledge and information sufficient to form a belief about the truth of the allegations contained in Paragraph 13 and, therefore, denies same.

14.    Mr. Araiza then showed Plaintiff an introductory video about Fluent.

**ANSWER**:  TBOM is without knowledge and information sufficient to form a belief about the truth of the allegations contained in Paragraph 14 and, therefore, denies same.

15.    Mr. Araiza represented that the monthly payment would include an amount for security monitoring and an amount for payoff of the equipment.

**ANSWER**:  TBOM is without knowledge and information sufficient to form a belief about the truth of the allegations contained in Paragraph 15 and, therefore, denies same.

16.    Mr. Araiza did not provide a contract for Plaintiff to sign nor did he review any contracts with the Plaintiff.

**ANSWER**:  TBOM is without knowledge and information sufficient to form a belief about the truth of the allegations contained in Paragraph 16 and, therefore, denies same.

17.    Later that same evening, an installer arrived at Plaintiff's home and began doing work that was unsatisfactory to Plaintiff, including:

      a.    Running an extension cord to an outdoor motion detector rather than installing an appropriate electrical line;

      b.    Attempting to run wires along the back of the home; and

      c.    Attempting to drill a hole in Plaintiff's home to run an additional electrical line before being stopped by Plaintiff.

**ANSWER**:  TBOM is without knowledge and information sufficient to form a belief about the truth of the allegations contained in Paragraph 17 and, therefore, denies same.

18.    Plaintiff contacted Fluent's agent Mr. Araiza to cancel the sale.

**ANSWER**:  TBOM is without knowledge and information sufficient to form a belief about the truth of the allegations contained in Paragraph 18 and, therefore, denies same.

19.    Fluent salesman Larry Araiza yelled at Plaintiff over the phone when she attempted to cancel.

**ANSWER**: TBOM is without knowledge and information sufficient to form a belief about the truth of the allegations contained in Paragraph 19 and, therefore, denies same.

20.    Plaintiff advised Fluent that the equipment would be safely stored at her home until Fluent made arrangements to retrieve the equipment.

**ANSWER**: TBOM is without knowledge and information sufficient to form a belief about the truth of the allegations contained in Paragraph 20 and, therefore, denies same.

21.    However, Fluent never arrived to claim the equipment.

**ANSWER**: TBOM is without knowledge and information sufficient to form a belief about the truth of the allegations contained in Paragraph 21 and, therefore, denies same.

22.    Instead, Plaintiff received notice from Fortiva that she had been approved for a credit card and also had a balance of over $1,000.00.

**ANSWER**:  TBOM admits that on October 12, 2020, it received and processed an application in Plaintiff's name for a Fortiva-branded credit card, which was approved, and that charges were incurred. TBOM is without knowledge and information sufficient to form a belief about the truth of any remaining allegations contained in Paragraph 22 and, therefore, denies same.

23.    Thereafter, Plaintiff began receiving harassing debt collection letters from Fortiva.

**ANSWER**: TBOM denies the allegations contained in Paragraph 23.

24.    Fluent had arranged credit card financing through Fortiva for its security system unbeknownst to Plaintiff.

**ANSWER**: TBOM is without knowledge and information sufficient to form a belief about the truth of the allegations contained in Paragraph 24 and, therefore, denies same.

25.    Plaintiff never would have agreed to open a credit card account to purchase the home security system.

**ANSWER**:  TBOM is without knowledge and information sufficient to form a belief about the truth of the allegations contained in Paragraph 25 and, therefore, denies same.

26.     Fluent's agent, Mr. Araiza, knew that Fluent was financing the equipment on a credit card.

**ANSWER**:  TBOM is without knowledge and information sufficient to form a belief about the truth of the allegations contained in Paragraph 26 and, therefore, denies same.

27.     Mr. Araiza knew that the 30-day cancellation period was a nullity due to the credit card financing of the equipment purchase.

**ANSWER**:  TBOM is without knowledge and information sufficient to form a belief about the truth of the allegations contained in Paragraph 27 and, therefore, denies same.

Fluent's Credit Granting Business Model

28.     At all times relevant to this Complaint, Fluent has obtained and used consumers' credit scores to determine the amount of activation fees and creditworthiness for its products and services but has not provided consumers with the notice required by FCRA and Regulation V.

**ANSWER**:  TBOM is without knowledge and information sufficient to form a belief about the truth of the allegations contained in Paragraph 28 and, therefore, denies same.

29.     Fluent and Fortiva are required pursuant to FCRA §§ 1681q, 1681n and 16810 to refrain from obtaining consumer reports from credit reporting agencies under false pretenses.

**ANSWER**:  The allegations in Paragraph 29 call for legal conclusions to which no answer is required and, therefore, TBOM denies same.

30.     At no time material hereto did Plaintiff ever have a relationship of any kind with Fortiva as defined under FCRA § 1681b(3)(A)-(E).

**ANSWER**:  The allegations in Paragraph 30 call for legal conclusions to which no answer is required and, therefore, TBOM denies same.

31.     At no time material hereto did Plaintiff ever have a relationship of any kind with Fluent regarding credit cards as defined under FCRA § 1681b(3)(A)-(E).

**ANSWER**:  The allegations in Paragraph 31 call for legal conclusions to which no answer is required and, therefore, TBOM denies same.

32.    Plaintiff has never knowingly given written instructions to Fluent or Fortiva to obtain and/or release to a third party a consumer report of which Plaintiff was the subject; nor has Fluent or Fortiva ever been ordered by a court of competent jurisdiction to issue a consumer report pursuant to FCRA § 1681b(1).

**ANSWER**:   TBOM is without knowledge and information sufficient to form a belief about the truth of the allegations contained in Paragraph 32 and, therefore, denies same.

33.    Fluent and Fortiva have compromised Plaintiffs access to credit in imparting to past, present and future credit grantors that Plaintiff has applied for a credit card in tandem with a relationship with Fortiva.

**ANSWER**:  TBOM is without knowledge and information sufficient to form a belief about the truth of the allegations contained in Paragraph 33 and, therefore, denies same.

34.    Reasonable procedures for users such as Fluent and Fortiva include restricting its agents' ability to obtain consumer reports on consumers for any impermissible purpose.

**ANSWER**:  The allegations in Paragraph 34 call for legal conclusions to which no answer is required and, therefore, TBOM denies same.

35.    Additionally, companies must give consumers notice when they provide consumers with less favorable credit terms based on a review of their credit reports, also known as risk-based pricing. 15 U.S.C. § 1681m(h).

**ANSWER**:  The allegations in Paragraph 35 call for legal conclusions to which no answer is required and, therefore, TBOM denies same.

36.    When consumers are alerted to the existence of negative information on their consumer reports, they can choose to check their consumer reports for accuracy and correct any inaccurate information that may affect their ability to obtain the product or service they are seeking or its price.

**ANSWER**:  TBOM is without knowledge and information sufficient to form a belief about the truth of the allegations contained in Paragraph 36 and, therefore, denies same.

37.    When consumers are informed that their credit score may increase the price of a product or service, they can comparison-shop.

**ANSWER**:  TBOM is without knowledge and information sufficient to form a belief about the truth of the allegations contained in Paragraph 37 and, therefore, denies same.

38.    FCRA and Regulation V's Risk-Based Pricing Rule require that a "person" provide a consumer with a risk-based-pricing notice if the person "uses a consumer report in connection with" an application for or extension of credit and, "based in whole or in part on the consumer report," extends "credit to that consumer on material terms that are materially less favorable than the most favorable terms available to a substantial proportion of consumers." 15 U.S.C. § 1681m(h)(1); 12 C.F.R. § 1022.72(a).

**ANSWER**:  The allegations in Paragraph 38 call for legal conclusions to which no answer is required and, therefore, TBOM denies same.

39.    FCRA defines a "consumer report" as "any written, oral, or other communication of any information by a consumer reporting agency bearing on a consumer's credit worthiness, credit standing, credit capacity, character, general reputation, personal characteristics, or mode of living which is used or expected to be used or collected in whole or in part for the purpose of serving as a factor in establishing the consumer's eligibility for . . . credit or insurance to be used primarily for personal, family, or household purposes." 15 U.S.C. § 1681a(d)(l).

**ANSWER**:  The allegations in Paragraph 39 call for legal conclusions to which no answer is required and, therefore, TBOM denies same.

40.    The Risk-Based Pricing Rule provides that a business providing closed-end credit must provide consumers with a risk-based-pricing notice before "consummation of the transaction, but not earlier than the time the decision to approve an application for, or a grant, extension, or other provision of, credit, is communicated to the consumer by the person required to provide the notice." 12 C.F.R. § 1022.73(c)(1)(i).

**ANSWER**:  The allegations in Paragraph 40 call for legal conclusions to which no answer is required and, therefore, TBOM denies same.

41.    Fluent is a closed-end creditor that grants its customers the right to defer payment for its alarm and security-system equipment over the life of a long-term contract.

**ANSWER**:  TBOM is without knowledge and information sufficient to form a belief about the truth of the allegations contained in Paragraph 41 and, therefore, denies same.

42.     Customers receive security monitoring equipment when they agree to a long-term Home Security Contract, generally for five years, that requires monthly payments and other fees.

**ANSWER**:  TBOM is without knowledge and information sufficient to form a belief about

the truth of the allegations contained in Paragraph 42 and, therefore, denies same.

43.     Customers are typically charged an activation fee, a material term, and then must pay the contract's monthly fees even if they cancel the monitoring service. Upon cancellation, the customer must pay 90% of the contract's remaining balance.

**ANSWER**:  TBOM is without knowledge and information sufficient to form a belief about

the truth of the allegations contained in Paragraph 43 and, therefore, denies same.

44.     Here, Plaintiff was charged approximately $40 to initiate service and was told that monthly payments would include an amount for the security monitoring and an amount for the equipment payoff.

**ANSWER**:  TBOM is without knowledge and information sufficient to form a belief about

the truth of the allegations contained in Paragraph 44 and, therefore, denies same.

45.     Upon information and belief, Fluent's customer contracts list retail prices for the equipment that it provides. Fluent then effectively uses activation fees, monthly fees, and long-term contracts to recoup, over time, the cost of equipment "given" to customers, and the terms of this deferral vary based on customers' credit scores.

**ANSWER**:  TBOM is without knowledge and information sufficient to form a belief about

the truth of the allegations contained in Paragraph 45 and, therefore, denies same.

46.     Upon information and belief, Fluent charges customers 90% of the remaining balance on the contract as a lump sum if they cancel the monitoring service, demonstrating that the residual value is attributed to the equipment, not ongoing monitoring or other services.

**ANSWER**:  TBOM is without knowledge and information sufficient to form a belief about

the truth of the allegations contained in Paragraph 46 and, therefore, denies same.

47.     Because Fluent allows customers to defer payment for the alarm and security-system equipment over the life of a long-term contract, Fluent is extending credit to its customers.

**ANSWER**:  TBOM is without knowledge and information sufficient to form a belief

about the truth of the allegations contained in Paragraph 47 and, therefore, denies same.

48.    Fluent determines the amount of the activation fee that it charges consumers, if any, which is a material term, by evaluating the consumer's credit score, and without providing consumers notice that their credit scores are being used to determine pricing.

**ANSWER**:  TBOM is without knowledge and information sufficient to form a belief about the truth of the allegations contained in Paragraph 48 and, therefore, denies same.

49.    Upon information and belief, Fluent's sales representatives run a credit check during their door-to-door sales presentations.

**ANSWER**:  TBOM is without knowledge and information sufficient to form a belief about the truth of the allegations contained in Paragraph 49 and, therefore, denies same.

50.    Further, Fluent's salespeople use tablets or smartphones during their sales pitches that reveal potential customers' credit scores at the outset of the sales presentation and before they negotiate the contract's activation fee and other key terms.

**ANSWER**:  TBOM is without knowledge and information sufficient to form a belief about the truth of the allegations contained in Paragraph 50 and, therefore, denies same.

51.    Fluent uses credit scores, in whole or in part, to offer credit to customers on terms that are materially less favorable than those available to a substantial proportion of customers.

**ANSWER**:  TBOM is without knowledge and information sufficient to form a belief about the truth of the allegations contained in Paragraph 51 and, therefore, denies same.

52.    Despite engaging in risk-based pricing when it extends credit and obtains and uses consumers' credit scores to determine the amount of activation fees, Fluent does not provide a risk-based-pricing notice to customers informing them that their credit scores could impact whether they would be charged an activation fee and, if so, the amount of the fee.

**ANSWER**:  TBOM is without knowledge and information sufficient to form a belief about the truth of the allegations contained in Paragraph 52 and, therefore, denies same.

Fortiva's Subprime Credit Granting Without Application

53.    Fortiva specializes in subprime "second look" credit for consumers "overlooked by traditional lenders."

**ANSWER**:  TBOM admits that it issues Fortiva-branded retail credit card accounts to consumers who may have been declined for a credit product by one or more other lenders.  TBOM denies any remaining allegations contained in Paragraph 53.

54.    Fortiva has a joint venture with Fluent wherein Fluent solicits homeowners to purchase home security equipment to be financed with credit card financing provided by Fortiva.

**ANSWER**:  TBOM denies the allegations contained in Paragraph 54.

55.    Fluent is able to recoup its costs with an immediate payment from Fortiva, and Fortiva is able to charge interest on credit granted to the unsuspecting consumer.

**ANSWER**:  TBOM denies the allegations contained in Paragraph 55.

56.    A credit card issuer may not issue a credit card, except in response to an explicit oral or written request or application for the card from a consumer or business (or when renewing a card which the customer has already accepted). 15 U.S.C. § 1642; Reg. Z § 1026.12(a).

**ANSWER**:  The allegations in Paragraph 56 call for legal conclusions to which no answer is required and, therefore, TBOM denies same.

57.    Plaintiff never orally or in writing requested a credit card from Fortiva.

**ANSWER**:   TBOM admits that on October 12, 2020, it received and processed an application in Plaintiff's name for a Fortiva-branded credit card, which was approved. TBOM is without knowledge and information sufficient to form a belief about the truth of the remaining allegations contained in Paragraph 57 and, therefore, denies same.

58.    Plaintiff has suffered annoyance, inconvenience, aggravation, and embarrassment from the home solicitation sale and resultant debt collection due to the acts and omissions of Fluent and Fortiva.

**ANSWER**:  TBOM is without knowledge and information sufficient to form a belief about the truth of the allegations contained in Paragraph 58 and, therefore, denies same.

## CLASS ACTION ALLEGATIONS

59.    Plaintiff incorporates the preceding paragraphs as if stated herein.

**ANSWER**: TBOM reasserts all of its answers to the preceding paragraphs as if fully set forth herein.

60.    This action is also filed as a class action. Plaintiff, serving as class representative, tentatively defines the classes, subject to modification after discovery and case development, as follows:

**Nationwide Risk-Based Pricing Notice Class:** All persons who were solicited in their homes by Fluent within two years prior to the filing of the lawsuit who received credit on less favorable terms based upon information in their credit report but did not receive the Risk-Based Pricing Notice before consummation of the transaction.

**Nationwide FCRA Credit Report Pull Class:** All persons who were solicited in their homes by Fluent within two years prior to the filing of the lawsuit whose credit was obtained without giving written instructions to Fluent to obtain and/or release to a third party a consumer report.

**Nationwide Equitable Class:** All persons who were extended credit with Fortiva to pay Fluent following an interaction with Fluent without requesting credit or providing consent.

**Nationwide TILA Class:** All persons who were extended credit with Fortiva following an interaction with Fluent without requesting credit or providing consent.

**ANSWER**: TBOM admits that Plaintiff purports to bring this action as a class action under Rule 23, but denies that certification of any class is appropriate in this case and denies any remaining allegations contained in Paragraph 60.

61. Plaintiff reserves the right to refine the class definitions in light of discovery and additional investigation.

**ANSWER**: TBOM is without knowledge and information sufficient to form a belief about the truth of the allegations contained in Paragraph 61 and, therefore, denies same.

62. The putative classes are so numerous that joinder of all members is impractical.

**ANSWER**: TBOM is without knowledge and information sufficient to form a belief about the truth of the allegations contained in Paragraph 62 and, therefore, denies same.

63. There are questions of law and fact common to the putative classes, which predominate over any questions affecting only individual class members.

**ANSWER**: TBOM is without knowledge and information sufficient to form a belief about the truth of the allegations contained in Paragraph 63 and, therefore, denies same.

64. The principal common issues involve whether Defendants' conduct regarding the aforementioned communications constitute a violation of the federal Fair Credit Reporting Act, and the federal Truth in Lending Act.

**ANSWER**:  TBOM denies that it has violated the Fair Credit Reporting Act, the Truth in Lending Act, or any other federal or state statute or law.  TBOM is without knowledge and information sufficient to form a belief about the truth of the remaining allegations contained in Paragraph 64 and, therefore, denies same.

65.     One or more of Plaintiffs claims are typical of those of the putative classes and said claims are based on the same legal and factual theories.

**ANSWER**:  TBOM is without knowledge and information sufficient to form a belief about the truth of the allegations contained in Paragraph 65 and, therefore, denies same.

66.     Plaintiff will fairly and adequately protect the interests of the classes. She has suffered pecuniary injury as a result of Defendants' actions and will, accordingly, vigorously litigate this matter. Plaintiff is greatly annoyed at being the victim of Defendants' illegal and fraudulent conduct and wishes to see that wrong remedied. To that end, Plaintiff has retained counsel experienced in claims involving unfair business practices.

**ANSWER**:  TBOM denies that it has engaged in any illegal or fraudulent conduct or any unfair business practices.  TBOM is without knowledge and information sufficient to form a belief about the truth of the remaining allegations contained in Paragraph 66 and, therefore, denies same.

67.     Neither the Plaintiff nor her counsel has any interest that might prevent them from vigorously pursuing this claim.

**ANSWER**:  TBOM is without knowledge and information sufficient to form a belief about the truth of the allegations contained in Paragraph 67 and, therefore, denies same.

68.     A class action is a superior method for the fair and efficient adjudication of this particular claim and controversy.

**ANSWER**:  TBOM is without knowledge and information sufficient to form a belief about the truth of the allegations contained in Paragraph 68 and, therefore, denies same.

69.     The interest of putative class members in individually controlling and maintaining the prosecution of separate claims against Defendants is small given the fact that they are unlikely to be aware of their legal rights and the amount of statutory or actual damages in an individual action is relatively small.

**ANSWER**: TBOM is without knowledge and information sufficient to form a belief about the truth of the allegations contained in Paragraph 69 and, therefore, denies same.

70.    The management of the class claims is likely to present significantly fewer difficulties than those presented in many larger, and more complex, class actions.

**ANSWER**: TBOM is without knowledge and information sufficient to form a belief about the truth of the allegations contained in Paragraph 70 and, therefore, denies same.

71.    As a proximate and/or foreseeable result of Defendants' wrongful conduct, each member of the putative classes has suffered actual and/or statutory damages.

**ANSWER**: TBOM denies that it has engaged in any wrongful conduct, or has caused Plaintiff or any member of the putative classed to suffer actual or statutory damages. TBOM is without knowledge and information sufficient to form a belief about the truth of the remaining allegations contained in Paragraph 71 and, therefore, denies same.

## COUNT I — VIOLATION OF THE FCRA
### 15 U.S.C. § 1681 *et seq*
**On behalf of Plaintiff Ms. Stover and the Nationwide FCRA Credit Report Pull Class**

72.    Plaintiff incorporates the preceding paragraphs as if stated herein.

**ANSWER**: TBOM reasserts all of its answers to the preceding paragraphs as if fully set forth herein.

73.    Fluent has provided credit to Plaintiff and class members on material terms that are materially less favorable terms than those offered to a substantial proportion of other consumers, based on information in consumer reports.

**ANSWER**: TBOM is without knowledge and information sufficient to form a belief about the truth of the allegations contained in Paragraph 73 and, therefore, denies same.

74.    Fluent has failed to provide its customers receiving less favorable material terms based on their credit scores with a notice with all the information required by the Risk-Based Pricing Rule before consummation of the transaction. 15 U.S.C. § 1681m(h)(1); 12 C.F.R. § 1022.73(c)(1)(i).

**ANSWER**: TBOM is without knowledge and information sufficient to form a belief about the truth of the allegations contained in Paragraph 74 and, therefore, denies same.

75.    Fluent's acts or practices, as described above, violate the Risk-Based Pricing Rule.

**ANSWER**: TBOM is without knowledge and information sufficient to form a belief about the truth of the allegations contained in Paragraph 75 and, therefore, denies same.

76.    Fluent's conduct, action and inactions were and continue to be willful, rendering it liable for punitive damages in an amount to be determined by the Court pursuant to 15 U.S.C. §1681n. In the alternative, Fluent has been negligent, entitling Plaintiff to recover under 15 U.S.C. §1681o.

**ANSWER**: TBOM is without knowledge and information sufficient to form a belief about the truth of the allegations contained in Paragraph 76 and, therefore, denies same.

### COUNT II — VIOLATION OF THE FCRA
### 15 U.S.C. § 1681 *et seq*
### On behalf of Plaintiff Ms. Stover and the Nationwide Risk Based Pricing Notice Class

77.    Plaintiff incorporates the preceding paragraphs as if stated herein.

**ANSWER**: TBOM reasserts all of its answers to the preceding paragraphs as if fully set forth herein.

78.    Defendants Fluent and Fortiva willfully and/or negligently violated the provisions of the FCRA in the following respects:

    a.    Fluent and Fortiva have used or obtained a consumer report without a purpose authorized by the FCRA in violation of 15 U.S.C. § 1681b(f).

    b.    Fluent and Fortiva have falsely, purposely, surreptitiously and maliciously obtained the Plaintiffs and class members' credit reports in violation of FCRA § 1681q.

    c.    Fluent and Fortiva have falsely, purposely, surreptitiously and maliciously obtained the Plaintiffs and class members' credit reports in violation of FCRA § 1681n.

    d.    Fluent and Fortiva have obtained the Plaintiffs and class members' credit reports in violation of FCRA § 1681o.

**ANSWER**: TBOM denies that it has violated the FCRA in any respect, including but not limited to the alleged violations set forth in sub-paragraphs a-d. TBOM is without knowledge and information sufficient to form a belief about the truth of the remaining allegations contained in Paragraph 78 and, therefore, denies same.

79.     Fluent's conduct, action and inactions were and continue to be willful, rendering it liable for punitive damages to Plaintiff and the class in an amount to be determined by the Court pursuant to 15 U.S.C. §1681n. In the alternative, Fluent has been negligent, entitling Plaintiff and the class to recover under 15 U.S.C. §1681o.

**ANSWER**: TBOM is without knowledge and information sufficient to form a belief about the truth of the allegations contained in Paragraph 79 and, therefore, denies same.

### COUNT III — VIOLATION OF THE TILA
### 15 U.S.C. § 1642
### On behalf of Plaintiff Ms. Stover and the Nationwide TILA Class

80.     Plaintiff incorporates the preceding paragraphs as if stated herein.

**ANSWER**: TBOM reasserts all of its answers to the preceding paragraphs as if fully set forth herein.

81.     Defendant Fluent completed a credit card application on behalf of Plaintiff without her request, application, or consent in violation of 15 U.S.C. § 1642.

**ANSWER**: TBOM denies the allegations contained in Paragraph 81.

82.     Defendant Fortiva provided Plaintiff with a credit card without her request, application, or consent in violation of 15 U.S.C. § 1642.

**ANSWER**: TBOM denies the allegations contained in Paragraph 82.

### COUNT IV— FRAUDULENT INDUCEMENT
### On behalf of the Plaintiff Ms. Stover

83.     Plaintiff incorporates the preceding paragraphs as if stated herein.

**ANSWER**: TBOM reasserts all of its answers to the preceding paragraphs as if fully set forth herein.

84.    Defendant Fluent's sales agent induced Plaintiff into a sales contract by making certain representations as to the quality and condition of its security system.

**ANSWER**:  TBOM is without knowledge and information sufficient to form a belief about the truth of the allegations contained in Paragraph 84 and, therefore, denies same.

85.    Plaintiff relied on Fluent's sales agent's representations in making the decision to purchase the security system.

**ANSWER**:  TBOM is without knowledge and information sufficient to form a belief about the truth of the allegations contained in Paragraph 85 and, therefore, denies same.

86.    Defendants Fluent's and Fortiva's agent suppressed the Defendants' intention to open a credit card account on behalf of the Plaintiff for the purpose of financing the security system.

**ANSWER**:  TBOM denies that it "suppressed" anything, or that any agent of TBOM interacted with Plaintiff as alleged.  TBOM is without knowledge and information sufficient to form a belief about the truth of the remaining allegations contained in Paragraph 86 and, therefore, denies same.

87.    Plaintiff were damaged in that credit was opened on her behalf without her permission, amounts were charged to the credit, and interest was charged on that credit extended.

**ANSWER**:  TBOM admits that on October 12, 2020, it received and processed an application in Plaintiff's name for a Fortiva-branded credit card, which was approved, and that charges were incurred. TBOM is without knowledge and information sufficient to form a belief about the truth of the remaining allegations contained in Paragraph 87 and, therefore, denies same.

88.    As a result of Plaintiff's reliance on the Defendants' omissions, Plaintiff was harmed in that she was charged interest and credit was opened in her name that she did not want or request.

**ANSWER**:  TBOM admits that on October 12, 2020, it received and processed an application in Plaintiff's name for a Fortiva-branded credit card, which was approved, and that

-17-

charges were incurred. TBOM denies that it committed any "omissions." TBOM is without

knowledge and information sufficient to form a belief about the truth of the remaining

allegations contained in Paragraph 88 and, therefore, denies same.

89.    As a result of the Defendants' actions, Plaintiff has suffered emotional distress, out of pocket loss, financial harm, annoyance, inconvenience, bother, upset, anger, and otherwise caused indignation and distress.

**ANSWER**:  TBOM denies that it is the cause of any emotional distress or other loss

alleged by Plaintiff.  TBOM is without knowledge and information sufficient to form a belief

about the truth of the remaining allegations contained in Paragraph 89 and, therefore, denies

same.

### COUNT V — COMMON LAW UNCONSCIONABLE INDUCEMENT
### On behalf of the Plaintiff Ms. Stover

90.    Plaintiff incorporates the preceding paragraphs as if stated herein.

**ANSWER**:  TBOM reasserts all of its answers to the preceding paragraphs as if fully set

forth herein.

91.    Plaintiff and Defendants occupy dramatically unequal bargaining positions, including that:

a.    Plaintiff is an elderly and unsophisticated consumer.

b.    Defendant Fluent is a large corporation in the business of selling, maintaining, and soliciting the sales of security systems.

c.    The Defendants use door-to-door sales practices.

d.    The Defendant Fortiva is a bank with reach throughout the United States and which does business lending and soliciting credit in all fifty states.

**ANSWER**:  TBOM admits that it is a bank engaged in, among other things, consumer

lending.  TBOM denies the remaining allegations contained in Paragraph 91, including subparts

c-d.  TBOM is without knowledge and information sufficient to form a belief about the truth of

the remaining allegations contained in subparts a-b and, therefore, denies same.

92.     The sales contracts were formed without a true meeting of the minds, caused by circumstances including:

a.      Defendants suppressed the fact that the Defendants intended to open credit for the Plaintiff;

b.      Defendants used door-to-door sales to solicit their products and credit;

c.      Defendants had no intention of honoring their representations, including that they hand no intention of honoring their "right to cancel;"

d.      Defendants never reviewed their contracts with the Plaintiff prior to selling them a security system or enrolling them in a credit card;

e.      The Defendants did not disclose the true cost of the transaction or that the transaction, service, and products would be sold and financed only on credit;

f.      The Defendants' agent refused to wait until Plaintiff's son could arrive and help his 80-year-old mother with the transaction;

g.      The Defendants' agent made representations that made the 80-year-old Plaintiff feel concerned for her safety in her home and feel compelled to purchase a product that she already had;

h.      The Defendants failed to disclose the existence onerous contract terms or any contract terms at all.

**ANSWER**:   TBOM denies the allegations contained in Paragraph 92, including its subparts, to the extent they are directed at TBOM.  TBOM is without knowledge and information sufficient to form a belief about the truth of the remaining allegations contained in Paragraph 92 and, therefore, denies same.

93.     Under the specific circumstances alleged, the contract contains substantively unconscionable and commercially unreasonable terms.

**ANSWER**:   TBOM denies the allegations contained in Paragraph 93 to the extent they are directed at TBOM.  TBOM is without knowledge and information sufficient to form a belief about the truth of the remaining allegations contained in Paragraph 93 and, therefore, denies same.

94.    The contract was unconscionable under all circumstances alleged at the time it was made and/or induced, by unconscionable conduct, and therefore is unenforceable.

**ANSWER**:  TBOM denies the allegations contained in Paragraph 94 to the extent they are directed at TBOM.  TBOM is without knowledge and information sufficient to form a belief about the truth of the remaining allegations contained in Paragraph 94 and, therefore, denies same.

95.    Plaintiff was financially damaged as a result of Defendants' actions and suffered, and continue to suffer, significant emotional distress, humiliation, fear, concern, worry, indignation, and other harm.

**ANSWER**:  TBOM denies the allegations contained in Paragraph 95 to the extent they are directed at TBOM.  TBOM is without knowledge and information sufficient to form a belief about the truth of the remaining allegations contained in Paragraph 95 and, therefore, denies same.

**COUNT VI — JOINT VENTURE**
**On behalf of the Plaintiff Ms. Stover and the Nationwide FCRA Credit Report Pull Class, Nationwide Risk Based Pricing Notice Class, Nationwide TILA Class, and Nationwide Equitable Class**

96.    Plaintiff incorporates the preceding paragraphs as if stated herein.

**ANSWER**:  TBOM reasserts all of its answers to the preceding paragraphs as if fully set forth herein.

97.    The Defendants have a common interest; that is, Fluent, through its door-to-door agent, sold the security system, and Fortiva, through Fluent's door-to-door agent, issued financing for the purchase of the security system. Fortiva then paid Fluent for the security system and was able to then begin charging interest to the account.

**ANSWER**:  TBOM denies the allegations contained in Paragraph 97.

98.    Fortiva did not communicate directly with the Plaintiff or the class throughout the process, but instead relied on Fluent's agent to sell the financing.

**ANSWER**:  TBOM admits that on October 12, 2020, it received and processed an application in Plaintiff's name for a Fortiva-branded credit card, which was approved, and that

charges were incurred. TBOM is without knowledge and information sufficient to form a belief about the truth of the remaining allegations contained in Paragraph 98 and, therefore, denies same.

99.     The point of the enterprise was for all of the Defendants to enrich the other at the expense of the Plaintiff and the class.

**ANSWER**:  TBOM denies the allegations contained in Paragraph 99.

100.    Both of the Defendants have joint control and venture.

**ANSWER**:  TBOM denies the allegations contained in Paragraph 100.

101.    Both of the Defendants had a joint proprietary interest in getting the Plaintiff and the class to purchase the security system.

**ANSWER**:  TBOM denies the allegations contained in Paragraph 101.

102.    Both of the Defendants shared in the profits of the joint venture.

**ANSWER**:  TBOM denies the allegations contained in Paragraph 102.

103.    Plaintiff and the class were financially damaged as a result of the Defendants' joint venture and suffered, and continue to suffer, significant emotional distress, humiliation, fear, concern, worry, indignation, out of pocket loss, credit degradation, and other harm.

**ANSWER**: TBOM denies the allegations contained in Paragraph 103.

### COUNT VII — UNJUST ENRICHMENT
### On behalf of the Plaintiff Ms. Stover and the Nationwide Equitable Class

104.    Plaintiff incorporates the preceding paragraphs as if stated herein.

**ANSWER**:  TBOM reasserts all of its answers to the preceding paragraphs as if fully set forth herein.

105.    Defendant Fluent opened a credit card account in Plaintiff's name and classmembers' names without their request or consent.

**ANSWER**:  TBOM admits that on October 12, 2020, it received and processed an application in Plaintiff's name for a Fortiva-branded credit card, which was approved, and that charges were incurred. TBOM is without knowledge and information sufficient to form a belief

about the truth of the remaining allegations contained in Paragraph 105 and, therefore, denies same.

106.    Defendant Fluent applied the credit card charge to pay itself for the transaction.

**ANSWER**:  TBOM is without knowledge and information sufficient to form a belief about the truth of the allegations contained in Paragraph 106 and, therefore, denies same.

107.    Defendant Fluent was unjustly enriched by opening a credit card account in Plaintiff's name and class members' names and using the credit card to pay itself over $1,000.00.

**ANSWER**:  TBOM is without knowledge and information sufficient to form a belief about the truth of the remaining allegations contained in Paragraph 107 and, therefore, denies same.

108.    Plaintiff and the class were damaged by Defendant Fluent's conduct.

**ANSWER**:  TBOM is without knowledge and information sufficient to form a belief about the truth of the remaining allegations contained in Paragraph 108 and, therefore, denies same.

## AFFIRMATIVE DEFENSES

1.    Plaintiff's Complaint fails, in whole or in part, to state a claim upon which relief may be granted.

2.    Plaintiff's claims are subject to mandatory arbitration as provided in Plaintiff's cardholder agreement.

3.    The Court lacks jurisdiction over the nationwide putative class members because their claims do not relate to TBOM's contacts with West Virginia, and therefore, exercising specific personal jurisdiction over TBOM with respect to them would violate TBOM's due process rights.

4.    TBOM actions were not egregious, knowing, willful, wanton, grossly negligent, or reckless, nor did it act in bad faith, and it otherwise cannot be held responsible or liable for willfulness.

5.     Plaintiff has suffered no actual injury.  Thus, Plaintiffs lack Article III standing. *Spokeo, Inc. v. Robins*, 136 S. Ct. 1540 (2016).

6.     Plaintiff's damages, if any, were caused by the action and/or inactions of third parties and/or intervening causes over which TBOM had no control.

7.     Plaintiff's Complaint is barred, in whole or in part, because Plaintiff failed to properly mitigate her damages.

8.     Plaintiff's claim that TBOM committed willful violations of the FCRA is barred by the principles articulated in *Safeco Ins. Co. v. Burr*, 127 S. Ct. 2201 (2007).

9.     To the extent Plaintiff's Complaint seeks punitive damages, TBOM adopts by reference the defenses, criteria, limitations, standards, and constitutional protections mandated or provided by the United States Supreme Court in the following cases: *BMW v. Gore*,  517 U.S. 559 (1996); *Cooper Indus., Inc. v. Leatherman Tool Grp., Inc.*, 532 U.S. 923 (2001); *State Farm v. Campbell*, 538 U.S. 408 (2003); *Phillip Morris USA v. Williams*, 127 S. Ct. 1057 (2007); *Exxon Shipping Co. v. Baker*, 168 S. Ct. 265 (2008).

10.     TBOM states that at all times relevant hereto, TBOM conducted itself in conformity with all applicable laws and regulations, including those governing banking entities.

11.     TBOM reserves the right to assert any additional affirmative defenses as may be disclosed during the course of discovery.

## PRAYER

WHEREFORE, Defendant The Bank of Missouri prays for judgment as follows:

1.     That Plaintiffs take nothing by way of the Complaint;

2.     That the Court dismiss the Complaint against TBOM with prejudice;

3.     That TBOM be awarded its costs of suit incurred in defense of this action; and

4.    For such other relief as the Court deems just and proper.

Dated:  May 14, 2021                Respectfully submitted


                                    */s/ Elizabeth M. Thomas, Esq.*

                                    Elizabeth M. Thomas, Esq.
                                    MCGUIREWOODS LLP
                                    W. Va. Bar No. 12320
                                    Tower Two-Sixty
                                    260 Forbes Avenue
                                    Suite 1800
                                    Pittsburgh, PA 15222
                                    Telephone: (412) 667-7921
                                    Fax: (412) 667-7995
                                    ethomas@mcguirewoods.com

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on this 14th day of May, 2021, a true and correct copy of the foregoing The Bank of Missouri Answer to Complaint and Affirmative Defenses was served via electronic mail on all counsel of record.


*/s/ Elizabeth M. Thomas*

Elizabeth M. Thomas, Esq.

144652457_1.docx