UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF WEST VIRGINIA
AT BECKLEY

HILMA STOVER,
*on behalf of herself and a class
of similarly situated persons*,

      Plaintiff,

v.                                               CIVIL ACTION NO. 5:21-cv-00191

FLUENT HOME, LLC and
THE BANK OF MISSOURI
*doing business as* FORTIVA
RETAIL CREDIT,

      Defendants.

**MEMORANDUM OPINION AND ORDER**

Pending are Defendant Fluent Home LLC's ("Fluent") Motion to Compel Arbitration and to Stay Proceedings Pending Arbitration, filed May 14, 2021, [Doc. 6], and Plaintiff Hilma Stover's Motion to File a Surreply, [Doc. 15]. The matter is ready for adjudication. The Court **GRANTS** the motion to file a surreply.

I.

Fluent is a home security sales company that engages in door-to-door solicitations. [Doc. 1-1 ¶ 3]. On October 12, 2020, in the midst of the Pandemic, Larry Araiza, an unmasked Fluent salesman, approached Ms. Stover in her home. Ms. Stover is an eighty-year-old woman. [*Id.* ¶¶ 1, 5–6]. Mr. Araiza offered a Fluent home security system for sale, and installation efforts commenced. [*Id.* ¶ 7].

Ms. Stover contends that Mr. Araiza did not provide her with any documents, much less one including an arbitration clause. [Doc. 10 at 2 (citing Doc. 1-1 ¶¶ 10, 16)]. She notes she was not asked to read or sign a paper document. [*Id.* (citing Doc. 10-5 ¶ 7)]. She asserts she was not allowed to accept, reject, or modify terms of the Residential Agreement (the "Agreement") Mr. Araiza allegedly presented to her. She additionally notes that "the word 'arbitration' was never said to [her] or shown to [her] either on an electronic device or a paper document." [*Id.* at 2 (citing Doc. 10-5 ¶ 9)].

In its reply, Fluent maintains that Ms. Stover was sent a copy of the Agreement, including the arbitration clause, to her email and that she electronically signed the document through DocuSign. [Doc. 11 at 4]. Ms. Stover challenges the DocuSign assertion. She states:

> While the text of the Reply [brief] describes the DocuSign procedures purportedly used by Defendant, it fails to cite any evidence supporting its contention that Plaintiff used DocuSign to sign the Agreement in this Case. Nor was such support included in its initial Motion or the declaration attached thereto, neither of which mentions DocuSign or even attempts to describe how the Agreement was shared and viewed or how Plaintiff's "signature" came to appear on the Agreement typed in Bradley Hand ITC font, available on nearly every computer.

[Doc. 15-1 at 1–2].

Moreover, Ms. Stover has asked Fluent to produce a copy of the "certificate of completion" generated by DocuSign. [*Id.* at 2]. What she received was a document that did not have the DocuSign header, but that also "makes no mention of arbitration, solely discusses Fluent's representations as to pre-existing security systems, and appears to be electronically signed using an electronic signature program offered by Adobe, which does not contain identifying information as to the signatory such as that contained in a DocuSign Envelope ID." [*Id.* at 2–3].

During the installation of the security system, Ms. Stover became dissatisfied and instructed the Fluent employee to stop work. [Doc. 10-5 ¶ 14]. Ms. Stover attempted to cancel the

sale and return the equipment to Fluent. [Doc. 1-1 ¶ 18]. Ms. Stover notified Fluent she would keep the equipment in her home until Fluent retrieved it. [*Id.* ¶ 20]. Fluent failed to do so. [*Id.* ¶ 21]. Ms. Stover then began receiving collection letters demanding payment; she learned Fluent had arranged credit card financing for the security system. [*Id.* ¶¶ 22–24].

Fluent asserts the Agreement allegedly signed electronically by Ms. Stover "included a comprehensive arbitration provision requiring the submission of any dispute to arbitration in accordance with the laws of Utah." [Doc. 7 at 1, Doc. 6-1 ¶ 20]. The relevant language of the Agreement states as follows:

> Each Party agrees to binding arbitration as the sole and exclusive remedy for any controversy, dispute, or claim of any kind or nature between the parties and the respective affiliate, directly or indirectly arising out of, relating to, or in connection with the Agreement regardless of what legal theory . . . is used to allege or determine liability for the injury or less [sic]. The parties agree they may bring claims against the other only in their individual capacity and not as a class or representative action plaintiff or class action member in any purported class or representative proceeding. . . . The arbitration shall not be conducted pursuant to the Federal Arbitration Act but shall be conducted in accordance with the arbitration laws of the State of Utah.

[Doc. 6-1 ¶ 20].

Fluent also asserts that, pursuant to its policies and procedures, Ms. Stover "received copies of all documents evidencing the transaction, specifically the . . . Agreement, which includes specific arbitration language." [Doc. 7 at 1–2 (citing Doc. 6-1, Doc. 6-2)]. According to Fluent, "[i]n the events leading up to Plaintiff's signing of the . . . Agreement, Araiza detailed all appropriate disclosures through the presentation of an interactive company-mandated video." [*Id.* at 2].

Ms. Stover instituted this action, alleging violations of the Fair Credit Reporting Act and the Truth in Lending Act. [*Id.*] Fluent now seeks to compel arbitration pursuant to the Agreement. [Doc. 6]. In Count Five of the Complaint, Ms. Stover alleges a number of irregularities

supporting her assertion that "[T]he sales contracts were formed without a true meeting of the minds." [Doc. 1-1 ¶ 92].

## II.

The Federal Arbitration Act ("FAA") provides that written agreements to arbitrate controversies arising out of an existing contract "shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract." 9 U.S.C. § 2. Courts apply a "strong federal policy in favor of enforcing arbitration agreements." *Hayes v. Delbert Servs. Corp.*, 811 F.3d 666, 671 (4th Cir. 2016) (quoting *Dean Witter Reynolds, Inc. v. Byrd*, 470 U.S. 213, 217 (1985)).

The United States Court of Appeals for the Fourth Circuit has held that litigants can compel arbitration if they can demonstrate

> (1) the existence of a dispute between the parties, (2) a written agreement that includes an arbitration provision which purports to cover the dispute, (3) the relationship of the transaction, which is evidenced by the agreement, to interstate or foreign commerce, and (4) the failure, neglect or refusal of the [opposing party] to arbitrate the dispute.

*Adkins v. Lab. Ready, Inc.*, 303 F.3d 496, 500–01 (4th Cir. 2002) (quoting *Whiteside v. Teltech Corp.*, 940 F.2d 99, 102 (4th Cir. 1992)). However, a "party cannot be required to submit to arbitration any dispute which he has not agreed [to arbitrate]." *Mey v. DIRECTV, L.L.C.*, 971 F.3d 284, 292 (4th Cir. 2020).

Section 4 of Title 9 provides, "If the making of the arbitration agreement or the failure, neglect, or refusal to perform the same be in issue, the court shall proceed summarily to the trial thereof." 9 U.S.C. § 4; *Berkeley Cnty. Sch. Dist. v. Hub Int'l Ltd.*, 944 F.3d 225, 234 (4th Cir. 2019). "The right to a jury trial under [§] 4 of the FAA, however, is not automatic. Rather, the

party seeking a jury trial must make an unequivocal denial that an arbitration agreement exists — and must also show sufficient facts in support." *Chorley Enters. v. Dickey's Barbecue Rests., Inc.*, 807 F.3d 553, 564 (citing *Oppenheimer & Co. v. Neidhardt*, 56 F.3d 352, 358 (2d Cir. 1995); *Manning v. Energy Conversion Devices, Inc.*, 833 F.2d 1096, 1103 (2d Cir. 1987)).

In reviewing a motion to compel arbitration, the Court applies "a standard such as the summary judgment test," construing all facts and reasonable inferences in the light most favorable to the non-moving party. *Berkeley Cnty. Sch. Dist.*, 944 F.3d at 234; *see also Dennis v. Columbia Collection Med. Ctr., Inc.*, 290 F.3d 639, 645 (4th Cir. 2002); Fed. R. Civ. Pro. 56(a). "The party requesting a jury trial under [§] 4 must provide sufficient evidence in support of its claims such that a reasonable jury could return a favorable verdict under applicable law." *Chorley Enters.*, 807 F.3d at 564. "In other words, to obtain a jury trial, the parties must show genuine issues of material fact regarding the existence of an agreement to arbitrate." *Id.* A dispute about a material fact is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986).

### III.

The Court first considers the parties' positions on the applicability of the FAA. Fluent contends that the language of the Agreement requires Utah law to be applied, not the FAA. [Doc. 7 at 2]. The Agreement states, in relevant part, "The arbitration shall not be conducted pursuant to the Federal Arbitration Act but shall be conducted in accordance with the arbitration laws of the State of Utah." [Doc. 6-1 ¶ 20].

Ms. Stover reads the Agreement to require Utah law be applied only to the arbitration. [Doc. 10 at 3]. Moreover, Ms. Stover asserts that the "arbitration laws of the state of

5

Utah" do not include substantive Utah contract law. [*Id.*]

Ms. Stover is correct. The language of the clause states, "*The arbitration . . . shall be conducted in accordance with the arbitration laws of the State of Utah.*" [Doc. 6-1 ¶ 20] (emphasis added). At this stage in the proceeding, there is no ongoing arbitration that would trigger this requirement. Accordingly, the FAA and West Virginia contract law govern. *See Mastrobuono v. Shearson Lehman Hutton*, 514 U.S. 52, 60 (1995); *Galloway v. Santander Consumer USA, Inc.*, 819 F.3d 79, 85 (4th Cir. 2016) ("When deciding whether the parties agreed to arbitrate a certain matter . . . , courts generally . . . should apply ordinary state-law principles that govern the formation of contracts." (quoting *First Options of Chi., Inc. v. Kaplan*, 514 U.S. 938, 944 (1995))).

Turning to the question of enforceability, Fluent, as noted, must show (1) there is a dispute between the parties, (2) there is a written agreement that includes an arbitration provision which purports to cover the dispute, (3) the transaction relates to interstate or foreign commerce, and (4) Ms. Stover has refused to arbitrate the dispute. *Adkins*, 303 F.3d at 500–01. The second *Adkins* requirement that there "is a written agreement that includes an arbitration provision which purports to cover the dispute" is at issue. As noted, Fluent asserts the Agreement contains a valid arbitration clause, while Ms. Stover asserts the presentment of the Agreement did "not allow for a meeting of the minds." [Doc. 10 at 14].

Based upon the foregoing discussion of the factual record, there is a genuine issue of material fact regarding the existence of a binding agreement to arbitrate. Accordingly, the Court concludes the issue must be resolved by a summary trial pursuant to 9 U.S.C. § 4. Our Court of Appeals has noted that the determination of appropriate pretrial procedures is "reserved to the able lawyers for the parties and the sound discretion of . . . the district court." *Berkeley Cnty. Sch. Dist.*,

944 F.3d at 242. The Court will thus set a pretrial conference at which those procedures will be established.

The parties are **ORDERED** to consult respecting proposed procedures on or before April 15, 2022. Counsel should discuss, *inter alia*, whether minimal discovery is necessary and the timing of the required summary trial. *See Boyles v. Langmore Cap., L.L.C.*, No. 1:20-cv-454, 2020 WL 4719282, at *4 (M.D.N.C. Aug. 13, 2020) (instructing the parties to consult about the appropriate summary trial procedure). The parties are additionally **ORDERED** to file no later than April 22, 2022, a joint report setting forth the procedures agreed upon and any remaining disagreements.

### IV.

The Motion to Compel Arbitration and to Stay Proceedings Pending Arbitration is **DENIED WITHOUT PREJUDICE.** The aforementioned pretrial conference is scheduled for **May 6, 2022**, **at 11:00 a.m. in Beckley**, **West Virginia**.

The Court directs the Clerk to transmit a copy of this written opinion and order to counsel of record and any unrepresented party.

ENTER: March 17, 2022

Frank W. Volk
United States District Judge