UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA

AT BECKLEY

| | |
|---|---|
| HILMA STOVER,<br>*On behalf of herself and a class*<br>*of similarly situated persons,*<br><br>Plaintiff,<br><br>v.<br><br>FLUENT HOME, LLC*, and*<br>THE BANK OF MISSOURI<br>*doing business as* FORTIVA<br>RETAIL CREDIT,<br><br>Defendants. | CIVIL ACTION NO. 5:21-cv-00191 |

**THE BANK OF MISSOURI'S MEMORANDUM IN
SUPPORT OF ITS MOTION TO COMPEL ARBITRATION**

INTRODUCTION

Plaintiff Hilma Stover and Defendant The Bank of Missouri ("TBOM") entered into a credit agreement for a Fortiva-branded loan to finance her purchase of a home security system sold by Defendant Fluent Home, LLC ("Fluent"). The agreement contains an arbitration clause, requiring the parties to arbitrate their disputes before either the Judicial Arbitration and Mediation Services or the American Arbitration Association.

Plaintiff apparently was not happy with the product and services she purchased from Fluent, so she now sues TBOM and Fluent under various federal and state laws for the bad customer experience she had, claiming that Fluent arranged for financing of the home security system by fraudulently opening a TBOM credit card in her name. (Compl. ¶¶ 1, 24, 25, 81.)

Regardless of whether her claims have any merit, this Court must first decide the threshold issue of whether the parties entered into a binding agreement to arbitrate.[1]

As shown below, the business records establish that Plaintiff and TBOM entered into a valid and enforceable arbitration agreement. Under the agreement, any challenge Plaintiff may raise to the "validity, enforceability or scope of th[e] Arbitration Provision" must be submitted to the *arbitrator*. For all of these reasons and those provided below, this Court should compel arbitration of Plaintiff's claims against TBOM.

## FACTUAL BACKGROUND

TBOM has an [application] process that a customer uses to apply for a loan from TBOM to finance the purchase of a merchant's services. The merchant – in this case – Fluent, assists with this process (John DeMonica Declaration ("DeMonica Decl.") ¶ 5.) Generally, a customer completes the application and approval process online assisted by a contractor or its representative. The process is as follows:

- **Step 1**: If consumer has an interest in financing his or her purchase from Fluent, the consumer is given the option to apply for a Fortiva Retail Credit ("Fortiva") account.[2] To start that process, the contractor provides the consumer with a mobile device or tablet with the first step of the application process. The consumer starts the process by selecting "Prequalify Now."

- **Step 2**: The consumer enters her required information into the Prequalification Form fields, then selects "Continue." The consumer provides an email address to apply and to receive legal documents.

---

[1] Fluent moved to compel arbitration pursuant to its Residential Agreement, which included an arbitration agreement. Plaintiff opposed the motion, arguing that "the sales contracts were formed without a true meeting of the minds." (ECF No. 22 at 4.) This Court found that whether there is "a binding agreement to arbitrate" was a material issue of fact, and under 9 U.S.C. § 4, ordered a summary trial. (ECF No. 22 at 6.)

[2] Atlanticus Services Corporation provides program management services for TBOM's private-label credit program, which is branded Fortiva Retail Credit. (DeMonica Decl. ¶ 2.) Atlanticus Services Corporation is the program manager that maintains the Plaintiff's account records, including the application, application process, credit card agreement, and other records that establish Plaintiff and TBOM's agreement to arbitrate. *Id.*

- **Step 3:** The consumer reviews the Credit Application for accuracy. The "Consent to Electronic Disclosures" hyperlink is presented, and the full consent is available for review at that time. The consumer is given a chance to review the consent. If the consumer is willing to receive electronic disclosures, the consumer provides this consent by clicking where indicated to proceed. After providing the consent, the consumer is offered an opportunity to have her application subject to the prequalification process. To proceed, the consumer selects the "Prequalify Now" icon to continue with the full application process.

- **Step 4:** A window will appear on the screen asking the consumer to confirm her information has been accurately entered. If inaccurate, the consumer is offered an opportunity to revise the information by selecting "No, Edit" to make changes. If the information submitted is accurate, the consumer is offered the opportunity to continue the process by selecting "Yes, Continue" to proceed.

- **Step 5:** The approved customer reviews the available offer and is offered the opportunity to review the account credit terms and the Cardholder Agreement, each available via separate hyperlinks. As with the consent to receive electronic disclosures, the consumer can click each link and review the account credit terms and the Cardholder Agreement. To proceed, the consumer confirms that she has read and understood the Cardholder Agreement, among other information, and confirms that she agrees to the terms. The Cardholder Agreement and a Welcome email is emailed to the customer when "Continue" is selected.

- **Step 6:** The customer selects "Home," then returns the device to the contractor.

(*Id.*)

Under the process described above, on October 12, 2020, TBOM received an application for credit in Plaintiff's name. (*Id.* ¶ 6.) Through the process described above, Plaintiff was provided with a copy of the Cardholder Agreement, which included an arbitration clause; and Plaintiff represented that she had read and understood the Cardholder Agreement's terms. (*Id.* ¶¶ 6–9, and Ex. A). That same day, a copy of the Cardholder Agreement was then sent to the email address provided on Plaintiff's credit applications. (*Id.* ¶¶ 6–9, and Ex. A.) Plaintiff was approved for a credit line of $5,000 and 0% annual APR. (*Id.* ¶ 7.)

The Cardholder Agreement for Plaintiff provides, in relevant part:

This Cardholder Agreement ("Agreement") governs the use of your revolving credit account (your "Account"). In this Agreement and in your monthly billing

statement ("Statement"), "we," "us" "our" and "Bank" refer to The Bank of Missouri, including, as applicable, our successors, assignees and representatives. "You," "your" and "Cardholder" refer to the person who applied and was approved for the Account and, as appropriate, all persons authorized to use the Account. . . . **This Agreement includes an Agreement to Arbitrate Claims (see "Arbitration Provision" below).**

\*\*\*

**ARBITRATION PROVISION (AGREEMENT TO ARBITRATE CLAIMS)**

Unless you are a "covered borrower," as defined under the Military Lending Act, 10 U.S.C. § 987, as amended, and except as otherwise stated below, any Claim (as defined below) will be resolved by binding arbitration pursuant to (a) this Arbitration Provision and (b) the Code of Procedure of the national arbitration organization to which the Claim is referred (as in effect when the Claim is filed). Claims will be referred to either Judicial Arbitration and Mediation Services ("JAMS") or the American Arbitration Association ("AAA"), as selected by the party electing to use arbitration. Streamlined arbitration procedures will be used if available. If a selection by us of one of these organizations is unacceptable to you, you have the right, within 30 days after you receive notice of our election, to select the other organization listed to serve as arbitration administrator. For purposes of this Arbitration Provision, "Claim" means any claim, dispute or controversy (whether in contract, tort, or otherwise), past, present or future, (collectively, "Claims") as further described below.

\*\*\*

*Significance of Arbitration; Limitations and Restrictions*. **IF YOU OR WE CHOOSE TO RESOLVE A CLAIM BY BINDING ARBITRATION, NEITHER YOU NOR WE WILL HAVE THE RIGHT TO (i) HAVE A COURT OR JURY DECIDE THE CLAIM BEING ARBITRATED (ii) ENGAGE IN PREARBITRATION DISCOVERY (THAT IS, THE RIGHT TO OBTAIN INFORMATION FROM THE OTHER PARTY) TO THE SAME EXTENT THAT YOU OR WE COULD IN COURT, (iii) PARTICIPATE AS A REPRESENTATIVE OR MEMBER OF ANY CLASS OF CLAIMANTS IN A CLASS ACTION, IN COURT OR IN ARBITRATION, RELATING TO ANY CLAIM SUBJECT TO ARBITRATION OR (iv) JOIN OR CONSOLIDATE CLAIMS OTHER THAN YOUR OWN OR OUR OWN. OTHER RIGHTS AVAILABLE IN COURT MAY NOT BE AVAILABLE IN ARBITRATION.**

\*\*\*

*Right To Reject Arbitration*. **You may reject this Arbitration Provision. If you do so, neither you nor we will have the right to engage in arbitration.** Rejecting

    this Arbitration Provision will have no effect on any of the other provisions in this Agreement. To reject this Arbitration Provision, you must send us your written rejection <u>within 60 days after we open your Account, or 60 days after any change in terms that affects this Arbitration Provision</u> . . . .

***

    ***Broad Meaning of "Claims."*** The term "claims" in this Arbitration Provision is to be given the broadest possible meaning and includes (by way of example and without limitation) Claims arising from or relating to (i) the application for or issuance of your Account, (ii) use, terms, change in terms or addition of terms, closing or collection of your Account or this Agreement, (iii) advertisements, promotions or oral and written statements related to your Account, including any Claims regarding information obtained by us from, or reported by us to, credit reporting agencies or others, (iv) Claims between you and our parent corporations, wholly or majority owned subsidiaries, affiliates, predecessors, successors, assigns, agents, independent contractors, employees, officers, directors or representatives arising from your Account or this Agreement and (v) Claims regarding the validity, enforceability or scope of this Arbitration Provision or this Agreement.

(*See* Ex. A at 2, 7–8 (emphasis in original).)

Plaintiff never rejected the Arbitration Provision. (DeMonica Decl. ¶ 10.)

## ARGUMENT

**I.    Plaintiff And TBOM Entered Into A Valid And Enforceable Contract For Arbitration.**

"A party seeking to compel arbitration pursuant to [the FAA] must establish the following: (1) the existence of a dispute between the parties, (2) a written agreement that includes an arbitration provision which purports to cover the dispute, (3) the relationship of the transaction, which is evidenced by the agreement, to interstate or foreign commerce, and (4) the failure, neglect or refusal of the [party] to arbitrate the dispute." *Harris v. Equifax Info. Servs.*, No. 2:18-CV-00558, 2019 WL 1714218, at *2–3 (S.D.W. Va. Apr. 17, 2019) (*citing Adkins v. Labor Ready, Inc.*, 303 F.3d 496, 500–01 (4th Cir. 2002) (*quoting Whiteside v. Teltech Corp.*, 940 F.2d 99, 102 (4th Cir. 1991)) (internal quotation marks omitted).). The only factor that can be in dispute here is the second one.

As discussed above, the records show how Plaintiff electronically entered into the Cardholder Agreement, which demonstrates mutual assent. To apply for financing with TBOM, Plaintiff's personal information, including her date of birth, social security number, and email address were required. (DeMonica Decl. ¶ 5.) After inputting Plaintiff's personal information, the selection "Pre-Qualify Now" was entered, and her information was confirmed by selecting, "Yes, Continue." (*Id.*) On the next screen, she was presented with the available offer of a credit line of $5,000 and 0% annual APR and provided with the account credit terms and Cardholder Agreement. (*Id.* ¶¶ 5, 7.)

To accept TBOM's offer, the records show that Plaintiff checked a box manifesting her assent to the Cardholder Agreement. This acknowledgment provides in relevant part:

> By checking the box, you agree that you have (i) read and understand your Cardholder Agreement [hyperlinked to document] including the terms of any deferred interest offer and agree to be bound by the terms, and (ii) have provided the correct email address in order to retain a copy of the Cardholder Agreement for your records.

(DeMonica Decl. ¶ 5). The records confirm that on October 12, 2020, a welcome letter and the Cardholder Agreement were sent to the email address provided in the application: wvkelli9470@suddenlink.net. (DeMonica Decl. ¶¶ 6–7.) Under the process described above, Plaintiff assented to the Cardholder Agreement and represented she had read and understood its terms, which include an arbitration provision. (DeMonica Decl. ¶¶ 6–10, and Ex. A.)[3]

## II. The Law Mandates Arbitration.

---

[3] TBOM recognizes that this Court has already determined that the existence of Fluent's agreement is a disputed factual issue, based on Fluent's assertion that it entered into an agreement with Plaintiff that included a valid arbitration agreement, and Plaintiff's contrary assertion that the sales contract was not made with "a true meetings of the minds." (ECF No. 22 at 6.) If Plaintiff makes the same argument on the TBOM agreement, and the Court again finds a factual dispute, for the sake of efficiency, TBOM requests that the Court allow it to participate in the limited discovery and summary trial required to resolve this issue.

The law mandates arbitration under TBOM's arbitration provision. In its recent opinions, the United States Supreme Court has reaffirmed the strong policy of favoring arbitration under the FAA. *See Henry Schein, Inc. v. Archer & White Sales, Inc.*, 139 S. Ct. 524, 529, 202 L. Ed. 2d 480 (2019) ("We must interpret the Act as written, and the Act in turn requires that we interpret the contract as written."); *CompuCredit Corp. v. Greenwood*, 565 U.S. 95, 98 (2012) ("[Section 2 of the FAA] requires courts to enforce agreements to arbitrate according to their terms."); *AT&T Mobility LLC v. Concepcion*, 563 U.S. 333, 343(2011) (a state policy that allows any party to a consumer contract to demand classwide procedures *ex post*, in spite of her agreement to submit all disputes to bilateral arbitration, is preempted by the FAA); *Rent-A-Ctr., W., Inc. v. Jackson*, 561 U.S. 63, 67 (2010) (The FAA "places arbitration agreements on an equal footing with other contracts, and requires courts to enforce them according to their terms."). Specifically, Section 2 of the FAA provides, in pertinent part:

> A written provision in any . . . contract evidencing a transaction involving commerce to settle by arbitration a controversy thereafter arising out of such contract or transaction . . . shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract.

9 U.S.C. § 2. As repeatedly stressed by the Supreme Court, "questions of arbitrability must be addressed with a healthy regard for the federal policy favoring arbitration." *Gilmer v. Interstate/Johnson Lane Corp.*, 500 U.S. 20, 26 (1991) (quoting *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 24–25 (1983)). In other words, "any doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration." *Moses*, 460 U.S. at 24–25.

Here, the Cardholder Agreement expressly states that "the arbitration provision is governed by the Federal Arbitration Act, 9 U.S.C. §§ 1 et seq." (Ex. A at 9, 10.) The Cardholder Agreement also includes the arbitration provision, which states that "any Claim (as defined below) will be

resolved by binding arbitration . . . ." (*Id.* at 7.) The agreement provides a broad definition of Claims, which includes:

> Claims arising from or relating to (i) the application for or issuance of your Account . . . (iv) Claims between you and our parent corporations, wholly or majority owned subsidiaries, affiliates, predecessors, successors, assigns, agents, independent contractors, employees, officers, directors or representatives arising from your Account or this Agreement and (v) Claims regarding the validity, enforceability or scope of this Arbitration Provision or this Agreement."

(*Id.* at 8.)

The arbitration provision must be construed in accordance with the FAA, which requires the Court to enforce the parties' arbitration agreement, compel arbitration, and stay the associated litigation:

> The court shall hear the parties, and upon being satisfied that the making of the agreement for arbitration or the failure to comply therewith is not in issue, the court *shall* make an order directing the parties to proceed to arbitration in accordance with the terms of the agreement.

9 U.S.C. § 4 (emphasis added).

> If any suit or proceeding be brought in any of the courts of the United States upon any issue referable to arbitration under an agreement in writing for such arbitration, the court in which such suit is pending, upon being satisfied that the issue involved in such suit or proceeding is referable to arbitration under such an agreement, *shall on application of one of the parties stay the trial of the action until such arbitration has been had in accordance with the terms of the agreement,* providing the applicant for the stay is not in default in proceeding with such arbitration.

9 U.S.C. § 3 (emphasis added).

### III. Any Challenge To The Arbitration Agreement Is Delegated To The Arbitrator.

If Plaintiff challenges the arbitrability, enforceability, scope, or validity of her claim, this challenge must be decided by the arbitrator, in accordance with the parties' contract. "When the parties' contract delegates the arbitrability question to an arbitrator, a court may not override the contract." *Schein*, 139 S. Ct. at 529. "Just as a court may not decide a merits question that the

parties have delegated to an arbitrator, a court may not decide an arbitrability question that the parties have delegated to an arbitrator." *Id.* at 530; *see also Rent-A-Center,* 561 U.S. at 70-72 (where the arbitration agreement contains a "delegation clause" providing that challenges to the validity or enforceability of the arbitration agreement are to be decided by the arbitrator, a court must enforce the clause according to its terms and compel arbitration of these "gateway" issues); *AT & T Techs., Inc. v. Commc'ns Workers of Am.*, 475 U.S. 643, 650 (1986) (a court has "'no business weighing the merits of the grievance'" because the "'agreement is to submit all grievances to arbitration, not merely those which the court will deem meritorious.'").

Here, the Cardholder Agreement provides that "Claims will be resolved by arbitration," and "Claims" are explicitly defined to include "Claims regarding the validity, enforceability or scope of this Arbitration Provision or this Agreement." (Ex. A at 8.) This language is clear and unmistakable evidence that the parties intended to encompass the issue of arbitrability within their agreement. *Schein*, 139 S. Ct. at 530 ("if a valid agreement exists, and if the agreement delegates the arbitrability issue to an arbitrator, a court may not decide the arbitrability issue")

As a result, any challenge to the arbitrability of the claim must be decided by the arbitrator. See *Novic v. Credit One Bank, Nat'l Ass'n*, 757 F. App'x 263, 266 (4th Cir. 2019) (delegation provision unambiguously required arbitration of any issues about the "enforceability" of the arbitration provision); *Harris v. Equifax Info. Servs.*, No. 2:18-CV-00558, 2019 WL 1714218, at *4 (S.D.W. Va. Apr. 17, 2019) ("delegation clause unmistakably delegates the question of whether the arbitration clause is valid to the arbitrator").[4]

---

[4] Any argument by Plaintiff that TBOM waived its right to arbitrate is unfounded. A defendant may only waive its right to arbitrate "by so substantially utilizing the litigation machinery that to subsequently permit arbitration would prejudice the party opposing the stay." *Maxum Foundations, Inc. v. Salus Corp.*, 779 F.2d 974, 981 (4th Cir. 1985). "Delay, without more, will not suffice to constitute waiver." *Id.* "Rather, the party objecting to arbitration must be actually prejudiced." *Id.* Plaintiff "bears the heavy burden of

**CONCLUSION**

For these reasons, TBOM, under Sections 3 and 4 of the FAA, moves this Court to compel arbitration.

Dated:  April 22, 2022                Respectfully submitted

*/s/ Carrie Goodwin Fenwick*

Carrie Goodwin Fenwick
Goodwin & Goodwin, LLP
300 Summers Street, Suite 1500
Charleston, WV 25301
304-346-7000
cgf@goodwingoodwin.com

---

proving waiver." *MicroStrategy, Inc. v. Lauricia*, 268 F.3d 244, 250 (4th Cir. 2001). Plaintiff cannot claim actual prejudice.  The case has been stayed very soon after it was filed pending the ruling on Fluent's motion to compel arbitration, there has been no discovery, and at the outset of the case, TBOM preserved its right to arbitrate as an affirmative defense.  (ECF No. 8 Aff. Def. No. 2.); *Carolina Throwing Co. v. S & E Novelty Corp.*, 442 F.2d 329, 330 (4th Cir. 1971) (filing of responsive pleading did not constitute waiver of arbitration).  Thus, any claim of waiver must be rejected.

## **CERTIFICATE OF SERVICE**

I hereby certify that on this 22nd day of April, 2022, a true and correct copy of the foregoing The Bank of Missouri's Memorandum in Support of its Motion to Compel Arbitration was served via electronic mail on all counsel of record.

*/s/ Carrie Goodwin Fenwick*
Carrie Goodwin Fenwick
