UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF WEST VIRGINIA
AT BECKLEY

HILMA STOVER,
*on behalf of herself and a class*
*of similarly situated persons*,

        Plaintiff,

v.                                  CIVIL ACTION NO.  5:21-cv-00191

FLUENT HOME, LLC,
THE BANK OF MISSOURI,
*d/b/a Fortiva Retail Credit,*
ATLANTICUS SERVICES CORPORATION, and
FORTIVA FINANCIAL, LLC,

        Defendants.

## MEMORANDUM OPINION AND ORDER

Pending are Defendants The Bank of Missouri ("TBOM"), Atlanticus Services Corporation ("Atlanticus"), and Fortiva Financial, LLC's ("Fortiva") (collectively, "Lending Defendants") Motion to Compel Arbitration and Dismiss First Amended Class Action Complaint, filed May 6, 2022 [Docs. 43, 44], and Defendant Fluent Home, LLC's ("Fluent") Renewed Motion to Compel Arbitration and to Dismiss Plaintiff's First Amended Class Action Complaint, filed on May 9, 2022 [Docs. 45, 46]. Plaintiff Hilma Stover responded on May 12 and 18, 2022, opposing both motions. [Docs. 53, 56]. The Lending Defendants filed a reply in support of their motion on May 18, 2022. [Doc. 57]. The matter is ready for adjudication.

**I.**

On October 12, 2020, a salesperson for Fluent, Larry Araiza, approached Ms. Stover about purchasing a home security system. [Doc. 53-2 at 1]. After some discussion between the two, Ms. Stover decided to have the system installed, believing she could cancel the service within 30 days and receive a refund. *Id.* at 1-2. Later that evening, another employee from Fluent began the installation, but Ms. Stover, unsatisfied with the work, ordered him to stop. *Id.* at 2.

After attempting to cancel the service, Ms. Stover alleges she discovered that her purchase had been financed using a Fortiva-branded credit card. [Doc. 32 ¶¶ 27-30]. TBOM issues Fortiva-branded accounts as part of its private-label credit program, Fortiva Retail Credit. [Doc. 43-1 ¶ 2]. This program, which is managed by Atlanticus and Fortiva, finances purchases from certain merchants, including Fluent. *Id.*

As a result of these events, Ms. Stover filed suit against Fluent and TBOM in the Circuit Court of Wyoming County, West Virginia, on February 26, 2021. [Doc. 1-1]. On March 29, 2021, TBOM removed the case to this Court [Doc. 1]. On May 14, 2021, Fluent filed a motion to compel arbitration. [Doc. 6]. Ms. Stover thereafter moved to amend her complaint on October 12, 2021. [Doc. 17].

On March 17, 2022, the Court denied Fluent's motion to compel arbitration, concluding there was "a genuine issue of material fact regarding the existence of a binding arbitration agreement." [Doc. 22 at 6]. As a result, the Court ordered a summary trial on that issue pursuant to 9 U.S.C. § 4. *Id.* Following a disagreement over TBOM's participation in the trial, TBOM separately moved to compel arbitration on April 22, 2022. [Doc. 25].

However, before ruling on TBOM's motion, on April 25, 2022, the Court granted Ms. Stover's motion to amend her complaint, allowing Atlanticus and Fortiva to be added as

defendants. [Doc. 30]. In response, the Lending Defendants jointly moved to compel arbitration

on May 6, 2022. [Doc. 43].[1] Fluent subsequently renewed its motion to compel arbitration on May

9, 2022, but raised no new arguments. [Doc. 45]. The Lending Defendants, thereafter on

September 19, 2022, filed a motion to stay discovery pending a ruling on their motion to compel

arbitration [Doc. 72], which they renewed on November 7, 2022. [Doc. 79].

In support of their motion to compel arbitration, the Lending Defendants contend

that Ms. Stover entered into their Cardholder Agreement when she signed up for Fluent's home

security system. [Doc. 44 at 6-8]. The arbitration provision in that agreement, the Lending

Defendants argue, prohibits Ms. Stover from bringing this lawsuit. *Id.* at 9-11. Ms. Stover

responds, however, that a genuine dispute of material fact exists as to whether she entered into the

Cardholder Agreement. [Doc. 53 at 7-17]. Moreover, she also claims that TBOM has waived its

right to arbitrate and that Atlanticus and Fortiva were not parties to agreement. *Id.* at 17-21.

## II.

The Federal Arbitration Act ("FAA") provides that written agreements to arbitrate

controversies arising out of an existing contract "shall be valid, irrevocable, and enforceable, save

upon such grounds as exist at law or in equity for the revocation of any contract." 9 U.S.C. § 2.

Indeed, courts apply a "strong federal policy in favor of enforcing arbitration agreements." *Hayes*

*v. Delbert Servs. Corp.*, 811 F.3d 666, 671 (4th Cir. 2016) (quoting *Dean Witter Reynolds, Inc. v.*

*Byrd*, 470 U.S. 213, 217 (1985)).

---

[1] At the May 19, 2022 pretrial conference, TBOM represented that its motion to compel arbitration was moot as a result of the Lending Defendants filing a separate motion to compel arbitration. The Court agrees and **DENIES** TBOM's motion **AS MOOT**. [Doc. 25].

The United States Court of Appeals for the Fourth Circuit has held that litigants can compel arbitration if they can demonstrate

> (1) the existence of a dispute between the parties, (2) a written agreement that includes an arbitration provision which purports to cover the dispute, (3) the relationship of the transaction, which is evidenced by the agreement, to interstate or foreign commerce, and (4) the failure, neglect or refusal of the [opposing party] to arbitrate the dispute.

*Adkins v. Lab. Ready, Inc.*, 303 F.3d 496, 500–01 (4th Cir. 2002) (quoting *Whiteside v. Teltech Corp.*, 940 F.2d 99, 102 (4th Cir. 1992)). However, a "party cannot be required to submit to arbitration any dispute which he has not agreed [to arbitrate]." *Mey v. DIRECTV, L.L.C.*, 971 F.3d 284, 292 (4th Cir. 2020).

Section 4 of Title 9 provides, "[i]f the making of the arbitration agreement or the failure, neglect, or refusal to perform the same be in issue, the court shall proceed summarily to the trial thereof." 9 U.S.C. § 4; *Berkeley Cnty. Sch. Dist. v. Hub Int'l Ltd.*, 944 F.3d 225, 234 (4th Cir. 2019). "[W]hen the parties disagree as to whether an agreement to arbitrate has been formed, 'the dispute is generally for courts to decide.'" *Rowland v. Sandy Morris Fin. & Est. Plan. Servs. LLC*, 993 F.3d 253, 258 (4th Cir. 2021) (quoting *Granite Rock Co. v. Int'l Bhd. of Teamsters*, 561 U.S. 287, 296 (2010)). "The right to a jury trial under [§] 4 of the FAA, however, is not automatic. Rather, the party seeking a jury trial must make an unequivocal denial that an arbitration agreement exists — and must also show sufficient facts in support." *Chorley Enters. v. Dickey's Barbecue Rests., Inc.*, 807 F.3d 553, 564 (4th Cir. 2015) (citing *Oppenheimer & Co. v. Neidhardt*, 56 F.3d 352, 358 (2d Cir. 1995); *Manning v. Energy Conversion Devices, Inc.*, 833 F.2d 1096, 1103 (2d Cir. 1987)).

In reviewing a motion to compel arbitration, the Court applies "a standard such as the summary judgment test," construing all facts and reasonable inferences in the light most

favorable to the non-moving party. *Berkeley Cnty. Sch. Dist.*, 944 F.3d at 234; *see also Dennis v. Columbia Collection Med. Ctr., Inc.*, 290 F.3d 639, 645 (4th Cir. 2002); Fed. R. Civ. P. 56(a). "The party requesting a jury trial under [§] 4 must provide sufficient evidence in support of its claims such that a reasonable jury could return a favorable verdict under applicable law." *Chorley Enters.*, 807 F.3d at 564. "In other words, to obtain a jury trial, the parties must show genuine issues of material fact regarding the existence of an agreement to arbitrate." *Id.* A dispute about a material fact is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986).

## III.

As a preliminary matter, because Fluent raises no new arguments in support of its renewed motion to compel arbitration, the Court again **DENIES** that motion as it did in its Memorandum Opinion and Order issued on March 17, 2022. Next, the Court turns to the Lending Defendants' motion to compel arbitration.

At issue is whether there is a written agreement between the parties containing an arbitration clause. *See Adkins*, 330 F.3d at 500–01. In support of their position, the Lending Defendants have produced an affidavit from an employee of Atlanticus and Fortiva. [Doc. 43-1]. That affidavit reviews the steps that customers generally complete as part of the Fortiva application and approval process. *Id.* It also represents that an application was received from Ms. Stover on October 12, 2020, and that a welcome email containing the Cardholder Agreement was sent to her email address. *Id.* ¶ 6. Consistent with the allegations in her complaint, Ms. Stover's affidavit, however, states that "[t]here was no mention of credit" and that Mr. Araiza "never mentioned credit." [Doc. 53-2 ¶ 12].

Examining this evidence in the light most favorable to Ms. Stover, the Court finds that a genuine dispute of material fact exists regarding whether a binding arbitration agreement was formed between the Lending Defendants and Ms. Stover. While the Lending Defendants infer from their business records that Ms. Stover completed the Fortiva application, Ms. Stover insists credit was never discussed, indicating she never reviewed the application. Accordingly, given these contradictory statements, a genuine dispute exists over whether Ms. Stover ever completed the application and thus entered into the Cardholder Agreement. The Court therefore **DENIES** the Lending Defendants' motion to compel arbitration.[2]

In light of these rulings, the Court concludes that the contract formation issues involving Ms. Stover and all Defendants must be resolved by a summary trial pursuant to 9 U.S.C. § 4. Our Court of Appeals has noted that the determination of appropriate pretrial procedures is "reserved to the able lawyers for the parties and the sound discretion of . . . the district court." *Berkeley Cnty. Sch. Dist.*, 944 F.3d at 242. The Court will thus set a pretrial conference at which those procedures will be established.

The parties are **ORDERED** to consult respecting proposed procedures on or before April 5, 2023. Counsel should discuss, inter alia, whether minimal discovery is necessary and the timing of the required summary trial. *See Boyles v. Langmore Cap., L.L.C.*, No. 1:20-cv-454, 2020 WL 4719282, at *4 (M.D.N.C. Aug. 13, 2020) (instructing the parties to consult about the appropriate summary trial procedure). The parties are additionally **ORDERED** to file no later than April 10, 2023, a joint report setting forth the procedures agreed upon and any remaining disagreements.

---

[2] As the Court has ruled on the Lending Defendants' motion to compel arbitration, it accordingly **DENIES AS MOOT** their motions to stay discovery. [Docs. 72, 79].

## IV.

The Lending Defendants' Motion to Compel Arbitration and Dismiss First Amended Class Action Complaint and Fluent's Renewed Motion to Compel Arbitration and to Dismiss Plaintiff's First Amended Class Action Complaint are **DENIED WITHOUT PREJUDICE**; TBOM's Motion to Compel Arbitration is **DENIED AS MOOT**; and the Lending Defendants' Motions to Stay Discovery are **DENIED AS MOOT**. The aforementioned pretrial conference is scheduled for May 12, 2023, at 11:00 a.m. in **Beckley, West Virginia**.

The Court directs the Clerk to transmit a copy of this written opinion and order to counsel of record and any unrepresented party.

ENTER: March 15, 2023

Frank W. Volk
United States District Judge